IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOUIS S. MARSICO, | ) |
| Plaintiff | ) ) ) |
| v. | ) Civ. No. 2:14-cv-00397 |
| RORY M. MARSICO, | ) ) Judge Maurice B. Cohill, Jr. |
| Defendant | ) ) |

# OPINION

Pending before the Court is Rory M. Marsico's ("Defendant") Motion for Summary Judgment [ECF No. 27] pursuant to Rule 56 of the Federal Rules of Civil Procedure and L.R. 56.1 of the Local Civil rules of the United States District Court for the Western District of Pennsylvania. Defendant seeks dismissal of the case, alleging that North Carolina law applies and that Louis S. Marsico ("Plaintiff") was contributorily negligent, thus barring any recovery for his injuries sustained when he fell through the floor in Defendant's bathroom.

On March 25, 2014, Plaintiff filed a Complaint in Civil Action [ECF No. 1] seeking compensatory damages as a result of injuries caused by a fall through Defendant's unfinished bathroom floor. Plaintiff alleges that his injuries are due to Defendant's negligence, specifically, that the Defendant failed to warn of the concealed dangerous condition of the floor before Plaintiff entered the bathroom.

On June 2, 2014, Defendant filed his Answer to Complaint [ECF No. 5] generally denying the allegations. On February 27, 2015, Defendant filed the Motion for Summary Judgment [ECF No. 27], claiming that there are no genuine issues as to any material fact, and Defendant is entitled to judgment as a matter of law. For the reasons set forth below, while

1

agreeing that North Carolina tort law controls the case at bar, Defendant's Motion for Summary Judgment is denied. Defendant is not entitled to judgment as a matter of law.

**I. Standard of Review.**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The parties must support their respective position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). In other words, summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505 (1986).

In reviewing the evidence, the court draws all reasonable inferences in favor of the non-moving party. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Huston v. Procter & Gamble Paper Prod. Corp., 568 F.3d 100, 104 (3d Cir. 2009) (citations omitted). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. See Anderson, 477 U.S. at 255; Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004); Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 247-48. An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard

to that issue. See id. "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587; Huston, 568 F.3d at 104.

## II. Relevant Facts.

Plaintiff is the father of Defendant [ECF No. 30 at 1]. Plaintiff is a lifelong resident of Pennsylvania and Defendant is a former resident Pennsylvania [ECF No. 30 at 1]. Defendant now resides in High Point, North Carolina but continues to maintain consistent contact with his family [ECF No. 30 at 1]. Defendant invited his parents to his home in North Carolina and Plaintiff and his wife accepted the invitation and travelled to North Carolina to visit their son [ECF No. 30 at 2]. At the time of the visit, Defendant was in the process of remodeling the bathroom in his home [ECF No. 30 at 2]. Plaintiff was aware of the construction going on in Defendant's home at the time of invitation [ECF No. 30 at 2] and believed that he and his wife would be doing "grunt" work in assisting his son with the remodeling process [ECF No. 31 at 2].

Plaintiff has spent his entire professional career in the construction business as an engineer or construction company owner [ECF No. 30 at 3]. However, Plaintiff, in deposition, testified that he has never worked with tools in his life and that he is not a craftsman [ECF No. 30 at 3]. Defendant, while working as a salesman and bartender, worked with and assisted his friends on their home remodeling projects, as well as undertaking other projects of his own [ECF No. 30 at 3].

In the past, Defendant would ask Plaintiff for construction advice, and when asked, Plaintiff would oblige and provide assistance [ECF No. 30 at 4]. During the father's trip to visit his son in North Carolina, Defendant requested help from Plaintiff in remodeling his bathroom, to which Plaintiff father obliged [ECF No. 30 at 4]. During the weekend trip, Plaintiff assisted

3

Defendant with the remodeling project for 8-10 hours the day before the accident occurred [ECF No. 30 at 4].

On the day before the accident, Plaintiff suggested that Defendant glue and screw down the plywood to cover the open floor joists [ECF No. 30 at 5]. The next day, when his parents returned to the home, Defendant requested that Plaintiff inspect the areas where electrical switches and outlets would be installed in the bathroom [ECF No. 30 at 6]. Without asking about the status of the plywood, Plaintiff entered the bathroom construction area and fell through the floor where the floorboard was not secured [ECF No. 30 at 6]. A floor joist was not properly placed under the plywood [ECF No. 30 at 6]. As the plywood was not properly anchored, it acted like a diving board and flipped, causing the Plaintiff to fall through the floor at an area between the joists and where two pieces of plywood met [ECF No. 30 at 7]. The fall caused Plaintiff to jam his armpit in the floor joist and shattered Plaintiff's humerus bone [ECF No. 31 at 3]. Plaintiff immediately sought medical attention for his injuries [ECF No. 31 at 3].

Plaintiff later testified to looking into the bathroom, and observing all of the plywood on the ground, covering all open areas with no overlaps, all cut and fit with holes in them [ECF No. 30 at 6]. From this observation, Plaintiff believed that the holes in the plywood were filled with screws, and that Defendant had followed Plaintiff's suggestion from the day before [ECF No. 30 at 6].

## III. Legal Analysis.

Defendant seeks summary judgment and argues two matters: (1) Defendant states that North Carolina's common-law defense of contributory negligence will bar recovery and is controlling rather than Pennsylvania's statutory defense of comparative negligence (42 Pa. Con. Stat. § 7102 (2014)); (2) Defendant contends that Plaintiff was contributorily negligent as a

4

matter of law, entitling Defendant to summary judgment. The two matters will be analyzed separately below.

**A. Choice of Law.**

Both contributory negligence and comparative negligence are defenses raised by defendants in tort actions. They differ in one very important regard. If a plaintiff is found to be contributory negligent, recovery is barred. See generally Smith v. Fiber Controls Corp., 268 S.E.2d 504 (N.C. 1980). In other words, under the defense of contributory negligence, if a plaintiff contributed to their injury by even 1%, while the remaining 99% culpability falls on the defendant, the plaintiff will be entirely unable to recover.

In contrast, if a plaintiff is found to be comparatively negligent, culpability will be apportioned between the plaintiff and defendant for their respective negligence, and the plaintiff may recover the difference between defendant's percentage culpability and plaintiff's percentage culpability so long as defendant is found at least 51% culpable. See generally 42 Pa. Cons. Stat. § 7102(a) (2014). In other words, a plaintiff contributing to their negligence does not necessarily bar recovery, up to 49% culpability.

Under North Carolina common law, it is well established that contributory negligence is the applicable defense. See Fiber Controls Corp., 268 S.E.2d at 506. In Pennsylvania, comparative negligence has been enacted by legislature as the applicable defense. See 42 Pa. Cons. Stat. § 7102 (2014).

**1. Federal Choice-of Law Rules for Diversity Actions.**

"It is well established that a district court in a diversity action will apply the choice of law rules of the forum state in determining which state's law will be applied to the substantive issues before it." Shuder v. McDonald's Corp., 859 F.2d 266, 269 (3d Cir. 1988) (citing Klaxon v.

5

Stentor Electric Manufacturing Co., 313 U.S. 487, 496 (1941). Accordingly, this Court will examine Pennsylvania law to determine whether the substantive law of North Carolina or Pennsylvania should be applied.

### 2. Pennsylvania Choice of Law Rules.

Pennsylvania has adopted a "flexible rule which permits analysis of the policies and interests underlying the particular issue before the court" for choice of law considerations. Griffith v. United Air Lines, Inc., 203 A.2d 796, 805 (Pa. 1964). The Third Circuit, explaining the standard in Griffith, stated that one must first determine if there is a real conflict, or no conflict at all between the two laws proffered. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007). Where the laws of two states do not differ, there is no conflict at all, and a choice of law analysis is unnecessary. See id. If there is a real conflict between the two laws, then the Court should examine the governmental policies underlying each law, and classify the conflict as either a true, false, or an unprovided-for situation. See id. A false conflict exists where only one state's interests would be impaired by the application of the other state's laws. See id. In a false conflict situation, the law of the state whose interests would otherwise be impaired should be applied. See id. An unprovided-for situation exists only where neither state's interests would be impaired if its laws were not applied. See id., n.9. In an unprovided-for situation, the Court should apply the traditional *lex locus contractus* rule. See id. A true conflict exists where both states' interests would be impaired by the application of the other states' laws. See id. at 230. If a true conflict exists, the Court must then determine which state has the "greater interest in the application of its law." Id. at 231 (quoting Cipolla v. Shaposka, 267 A.2d 854, 856 (Pa. 1970)). To weigh each state's interest, consideration is given to the types of

contacts establishing significant relationships, and to a qualitative appraisal of the relevant states' policies with respect to the controversy. See id.

The types of contacts establishing significant relationships include (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. See Henderson v. Merck & Co., Inc., U.S. Dist. LEXIS 45106, at *8 (E.D.Pa. Oct. 11, 2005) (quoting Restat. 2d of Conflict of Laws § 145). See also Griffith, 203 A.2d at 802; Flamer v. New Jersey Transit Bus Operations, Inc., 607 A.2d 260, 264 (Pa. Super. Ct. 1992); Laconis v. Burlington County Bridge Comm'n, 583 A.2d 1218, 1222-23 (Pa. Super. Ct. 1990). However, this analysis requires more than a mere counting of contacts; rather, the Court must weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue. See Hammersmith, 480 F.3d at 231.

### 3. Application of Pennsylvania's Choice of Law Standard.

There is no situation in which both Pennsylvania's comparative negligence law and North Carolina's contributory negligence law can be accommodated. Therefore, there is a real conflict between North Carolina's common law rule of contributory negligence as an absolute bar to plaintiff's recovery and Pennsylvania's statutory rule of comparative negligence, which allows plaintiff's recovery to be offset by any contributing negligence.

North Carolina's common-law contributory negligence is generally designed to protect defendants from liability when the plaintiff's own actions are a factor in bringing about the harm. See, e.g., Nationwide Mut. Ins. Co. v. Don Allen Chevrolet Co., 116 S.E.2d 780, 785 (N.C. 1960) (holding that contributory negligence by plaintiff is an absolute bar to recovery in

7

negligence claims). Pennsylvania's statutory comparative negligence is generally designed to distribute the burden of harm between the parties in accordance with their respective culpability. See, e.g., Howell v. Clyde, 620 A.2d 1107, 1109 (Pa. 1993) (quoting Rutter v. Northeastern Beaver County School Dist., 437 A.2d 1198, 1210 n.6 (Pa. 1981)). As the adoption of one of these defenses over the other is a policy decision made in each respective jurisdiction about how to allocate the burden of harm between the parties when the plaintiff is at least in part responsible for their injury, it cannot be argued persuasively that both state's interests will go unharmed if one state's law is unapplied. Therefore, this cannot be said to be an unprovided-for situation.

Plaintiff contends there is a false conflict because only Pennsylvania's interests will be harmed if the Court does not apply its law. Plaintiff reasons that because Defendant invited the Plaintiff into the forum where the injury occurred that the governmental policies of North Carolina cannot possibly be served. However, Plaintiff offers no reason to back the distinction of a plaintiff who enters North Carolina voluntarily of their own volition and a plaintiff who enters the State voluntarily at the invitation of the defendant or some third party, as it pertains to the possibility of the North Carolina's or Pennsylvania's policies being served. This is especially so where the invitation cannot be said to have proximately caused the injury, as here, where multiple days in between invitation and injury provide a loose temporal nexus. Rather, an invitation, as a proximate cause to a plaintiff's injury, is a factor for consideration in determining contributory negligence under North Carolina law. See generally Miller v. Atlanta & C.A.L.R. Co., 57 S.E. 345, 347 (N.C. 1907); Carter v. Seaboard A.L.R. Co., 81 S.E. 321, 324 (N.C. 1914).

Under Plaintiff's reasoning, any case or controversy arising from any set of facts once Plaintiff arrived in North Carolina would result in Pennsylvania law prevailing in a similar choice of law circumstance – even if the invitor is not party to the suit – due to a thin distinction

8

between the Plaintiff entering the forum voluntarily of their own volition rather than voluntarily by invitation. Therefore, because of the thin nature of this distinction, the lack of any authoritative source presented to back it, and the presence of authority directly opposing it, it does not persuade the Court that North Carolina's interests in protecting defendants in tort claims has been severed by the injured party being invited into the State. Thus, this Court finds the North Carolina and Pennsylvania laws to be in true conflict, as there are interests of both states that would be harmed if either state's law were unapplied.

Having determined a true conflict, the Court must now assess the quality and quantity of contacts in both North Carolina and Pennsylvania. We look to four specific contacts: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered. See Henderson, U.S. Dist. LEXIS 45106 at *8. See also Griffith, 203 A.2d at 802; Flamer, 607 A.2d at 264; Laconis, 583 A.2d at 1222-23.

First, the Court considers the place where the injury occurred. It is not contested by either party, nor could it be, that the injury giving rise to this suit occurred in North Carolina [ECF No. 31 at 7]. It should be noted that under Pennsylvania's choice of law standard, this factor is of paramount weight. "In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless some other state has a more significant relationship with the occurrence and the parties as to the particular issue involved, in which event the local law of the latter state will govern." Griffith, 203 A.2d at 803. See also LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1072 (3d Cir. 1996) (giving great weight to location of accident in a product liability action in choice of law consideration);

9

Henderson, U.S. Dist. LEXIS 45106 at *24 ("Perhaps, most importantly, plaintiff's injuries occurred in Michigan.") (holding that Michigan law applies); Laconis, 583 A.2d at 1223 (quoting Griffith, 203 A.2d at 803 with approval).

Second, the Court considers the place where the conduct causing the injury occurred. It is uncontested that the alleged negligent acts occurred in North Carolina [ECF No. 31 at 8]. Plaintiff makes note that while the alleged negligent acts occurred in North Carolina, the invitation bringing the Plaintiff to the site of the injury occurred while the Plaintiff was in Pennsylvania. However, given that multiple days passed between Defendant's invitation and Plaintiff's injury, this Court finds this notation weightless in considering the place where the conduct causing the injury occurred. In fact, it could easily be rephrased that the very same invitation was made while the Defendant was in North Carolina.

It is only relevant that the conduct causing the injury, allegedly negligence by the Defendant, occurred entirely within North Carolina. Plaintiff has not alleged that Defendant's invitation was a conduct that somehow proximately caused Plaintiff's injury. The only instances the invitation was mentioned in Plaintiff's complaint were entirely unrelated to the elements that give rise to Plaintiff's claim [ECF No. 1 at Paragraphs 6 & 9] (invitation mentioned to establish that Plaintiff was not trespassing). Therefore, all of the conduct that is alleged to have proximately caused Plaintiff's injury occurred in North Carolina.

Third, the Court considers the domicile, residence, nationality, place of incorporation, and place of business of the parties. Plaintiff is a lifelong resident of Pennsylvania, with his domicile in Pennsylvania. Defendant was a resident of North Carolina with a domicile there at the time of the alleged negligence. Plaintiff contends that because Defendant grew up in Pennsylvania and still maintains extensive contacts with the State that "this is a Pennsylvania

10

family." While this may be true, a family's state allegiance is irrelevant in determining the outcome of a conflict of laws where the conduct causing the injury is entirely unrelated to said family's state allegiance.

Defendant may have previously been a resident of Pennsylvania, however he was a resident of North Carolina at the time of the alleged negligence, the only time relevant to resolving the choice of law issue under Pennsylvania's standard. Therefore, the residency and domicile of the two parties are offset.

Finally, the Court considers the place where the relationship, if any, between the parties is centered. Plaintiff again contends here that this dispute is between members of a Pennsylvania family. However, the status of the family is not the question to be resolved by the Court. Rather, the question centers on Defendant's alleged negligence. As such, the duty and alleged subsequent breach of said duty occurred while both parties were in North Carolina, the injury occurred in North Carolina, and the injury was caused in North Carolina. This relationship – the relationship between the Defendant and Plaintiff as it pertains to the alleged negligence – is the only relationship relevant to a conflict of law analysis, and this relationship is centered in North Carolina.

Plaintiff argues <u>Griffith</u> to rebut this point and redirect the Court to Pennsylvania law, centering on whether or not the location of the injury was fortuitous. In <u>Griffith</u>, the injury occurred in Colorado as a plane crashed while the plane was passing over the state. No other relevant contacts in <u>Griffith</u> were tied to Colorado. See <u>Griffith v. United Air Lines, Inc.</u>, 203 A.2d 796 (Pa. 1964). Thus, the Court in <u>Griffith</u> found that the site of the injury was merely fortuitous and applied Pennsylvania law, where most relevant contacts existed. See <u>id</u>. Curiously, Plaintiff argues the wrong side of the coin, stating that the site of his injury was not

11

fortuitous because Defendant invited Plaintiff to North Carolina. This line of reasoning cuts against Plaintiff's argument to apply Pennsylvania law, as the site of the injury is ignored in cases where it is fortuitous, and given great weight where it is not fortuitous. See LeJeune, 85 F.3d at 1072 ("Here the occurrence of the accident in Delaware was not fortuitous.") (holding that Delaware law applies).

As Plaintiff himself stipulated that the injury occurred within North Carolina nonfortuitously, and for the above considerations of North Carolina's interests, the concerns that Plaintiff raises about Defendants inviting tort victims into North Carolina are minimized. Those concerns are further minimized when considering that for such a scheme to be effective: (1) the tort victim must have somehow contributed to their injury to be barred from recovery in North Carolina; and (2) that there must be some intent to injure for defendants in such a situation to invite tort victims into the State (no such intent has been alleged). In short, it is highly unlikely that applying North Carolina law to this case will result in tort victims being lured into the State and barred from recovery by contributory negligence in subsequent cases. Therefore, the relationship of the parties, as it pertains to Defendant's alleged negligence, is centered in North Carolina.

The Court holds that North Carolina's tort law and common law contributory negligence should be applied over Pennsylvania's statutory comparative negligence because all relevant contacts center in North Carolina except for the residence of the Plaintiff. North Carolina's interests in having their law applied are greater than Pennsylvania's interests.

### B. Plaintiff's Contributory Negligence as a Matter of Law.

Having found that North Carolina law applies in this case, this Court must look to North Carolina's contributory negligence laws to determine if Plaintiff was contributory negligent as a matter of law.

"A plaintiff is contributorily negligent when he fails to exercise such care as an ordinarily prudent person would exercise under the circumstances in order to avoid injury." Newton v. New Hanover County Bd. of Educ., 467 S.E.2d 58, 65 (N.C. 1996) (citing Fiber Controls Corp., 268 S.E.2d 504 (N.C. 1980)). "Thus, a plaintiff may be contributorily negligent if he fails to discover and avoid a defect that is visible and obvious." Id. "However, this rule is not applicable where there is 'some fact, condition, or circumstance which would or might divert the attention of an ordinarily prudent person from discovering or seeing an existing dangerous condition.'" Id. (quoting Walker v. Randolph Co., 112 S.E.2d 551, 554 (N.C. 1960)).

North Carolina's courts have routinely held that negligence and contributory negligence are rarely appropriate for summary judgment, and are inappropriate for summary judgment where diverse inferences can be drawn. Ballenger v. Crowell, 247 S.E.2d 287, 291 (N.C. Ct. App. 1978) (citing Olan Mills, Inc. v. Canon Aircraft Executive Terminal, Inc., 160 S.E.2d 735 (N.C. 1968)). See also Page v. Sloan, 190 S.E.2d 189, 194 (N.C. 1972) ("issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved in the ordinary manner.").

Defendant contends that summary judgment on the issue of Plaintiff's contributory negligence is appropriate because the Plaintiff failed to exercise ordinary care. However, Defendant cannot carry the burden of showing no genuine dispute of any material fact under North Carolina contributory negligence laws. See Anderson, 477 U.S. at 255.

13

Defendant's Brief in Support of Summary Judgment [ECF No. 28] alleges that Plaintiff exposed himself to a risk that he had specifically instructed Defendant to perform and that this risk could have easily been avoided by simply asking the Defendant whether the plywood had been secured or by looking at the plywood to see if it had been screwed down. Defendant relies on this principle assertion, coupled with Plaintiff's experience in the construction industry, to show that Plaintiff either knew or should have known of the risk he was taking in entering the bathroom.

However, Plaintiff contests these assertions with a version of facts, supported by Plaintiff's deposition, that give rise to a reasonable inference that the Plaintiff indeed took ordinary care in entering the bathroom [See ECF No. 31]. Plaintiff notes that while experienced in construction, his experience was as an estimator, a project engineer, and a project manager [ECF No. 31-1 at 7]. Plaintiff also testified that he personally has never done any construction work nor any home projects himself [ECF No. 31-1 at 22-23]. Plaintiff also asserts that the condition of the plywood was concealed, given that the plywood was in place and appeared to be screwed down [ECF No. 31-1 at 45-47]. Therefore, Plaintiff contends, upon an inspection of the plywood exhibiting ordinary care that he could have reasonably believed that the boards were secured.

Defendant cites DiOrio v. Penny, where tenants were held to have been contributorily negligent for their injuries in falling down a staircase. 417 S.E.2d 457 (N.C. 1992). The Court in DiOrio stated, "The trial court will grant summary judgment in cases where the evidence is uncontroverted that a party failed to use ordinary care....The uncontroverted projection of the evidence in this case…clearly indicates that the plaintiff had used the stairs at least twice a day

14

for nearly six months, and that by her own admission she was aware they presented a danger...." Id. at 459.

Defendant also cites Jenkins v. Lake Montonia Club, Inc. in support of his motion. In Jenkins, a man was injured who dove head first into shallow water. 479 S.E.2d 259 (1997). The Court in Jenkins found the record reflected, uncontroverted, that "plaintiff was aware that the water beneath the slide was shallow, and that if he hit his head on the bottom of the swimming area it would hurt" and that the danger of his actions were "obvious" to the plaintiff. See id. at 263.

In both DiOrio and Jenkins, the plaintiff, according to an uncontroverted record, was entirely aware of the risks of their actions. In DiOrio and Jenkins, the plaintiffs had considerably more experience with the accident site than did the Plaintiff in this case. In addition, the record in this case, based on facts viewed and inferences drawn in the light most favorably to the plaintiff, does not show that the Plaintiff was familiar with the hazardous plywood in his son's bathroom at the time of the injury, nor that he could have ascertained the unsecured nature of the boards with an inspection beyond ordinary care. This is directly supported by Plaintiff's deposition that the boards appeared to have been secured and their hazardous nature could not be readily ascertained. Put simply, the record in this case is not uncontroverted as in DiOrio and Jenkins.

The Court holds summary judgment on the issue of Plaintiff's contributory negligence improper. Viewing the facts and drawing inferences in light most favorable to the Plaintiff, it can be said that a reasonable juror could find that the Plaintiff was not contributorily negligent.

15

## IV. Conclusion.

In conclusion, the Court finds that North Carolina's common law contributory negligence shall be applied over Pennsylvania's statutory comparative negligence because all relevant contacts center in North Carolina except for the residence of the Plaintiff. In addition, because there are genuine disputes as to material facts, Defendant's Motion for Summary Judgment will be denied. The case shall proceed in consideration of Plaintiff's negligence claims under North Carolina tort law.

As the Court holds that Plaintiff cannot be said to have been contributorily negligent as a matter of law, Plaintiff's exercise of ordinary care and the doctrine of last clear chance are properly reserved for trial.

An appropriate Order follows.

June /, 2015

*Maurice B. Cohill*
Maurice B. Cohill, Jr.
Senior District Court Judge