# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS S. MARISCO, | ) | |
| Plaintiff, | ) | Civil Action No. 14-397 |
| v. | ) | |
| RORY M. MARISCO, | ) | |
| Defendant. | ) | |

## Opinion

In March, 2012, Plaintiff Louis Marsico and his wife traveled from their home in Pennsylvania to North Carolina to visit their son, Defendant Rory Marsico. On Saturday, March 24, 2012, Louis Marsico assisted his son with remodeling work in Rory Marsico's bathroom. After a long day on Saturday, Louis Marsico returned with his wife to Rory Marsico's house on March 25, 2012, where Louis Marsico entered the unfinished bathroom and fell through plywood that was not securely placed, and thereby suffered injuries.

Louis Marsico filed this action against Rory Marsico alleging one count of negligence in failing to exercise the proper degree of care under the circumstances. Plaintiff alleges that his injuries are due to Defendant's negligence, specifically, that the Defendant failed to warn of the concealed dangerous condition of the floor before Plaintiff entered the bathroom. While not disagreeing with the bulk of Louis Marsico's factual allegations, Rory Marsico counters that he is not liable for damages due to Louis Marsico's contributory negligence and actual knowledge of the unsafe condition. Louis Marsico seeks an award of $1.5 million dollars, including actual medical damages of $14,979.61.

A bench trial in this matter was held on September 25, 2015. The parties submitted proposed findings of fact and conclusions of law, and this matter is now ripe for resolution. For the reasons that follow we conclude that Rory Marsico was negligent and his negligence was the proximate cause of Louis Marsico's injuries, that Louis Marsico was not contributorily negligent, and that Louis Marsico is entitled to an award for actual medical damages and for pain and suffering.

**I.      Factual Findings**

Plaintiff, Louis Marsico, is a citizen of the Commonwealth of Pennsylvania. His son, Defendant, Rory Marsico, is a citizen of the State of North Carolina. On the weekend of March 23, 2012, Louis and his wife drove to North Carolina to visit their son.

Louis Marsico has a bachelor's degree in civil engineering, and has worked as a general contractor. He was the president of a company he owned. He acted as an estimator, project manager, salesperson, and accountant for his company. As the company grew, he hired employees and acted as the manager of each of the aforementioned areas of work. However, he did not work as a laborer or otherwise perform construction work.

In the weeks prior to the visit, Rory had begun a remodeling project in his dressing room and bathroom to make it one space as an *en suite* to the master bedroom. Rory would often seek advice on renovation projects from his father. In relation to Rory's project, Louis Marsico had discussed the project with his son over the telephone and had prepared layout sketches on alternatives as to how to lay out the project.

On Saturday, March 24, 2012, Louis assisted Rory with the remodeling project for approximately 12 hours. Specifically, they were working on plumbing and the relocation of plumbing pipes. Louis Marsico helped with the project by cutting pipes and elbows for the

2

plumbing; gluing; and by handing Rory pieces of pipe. In addition, Louis offered suggestions to his son as to how to best access the plumbing in order to complete the plumbing work.

In this regard, the space in which the work was being conducted included a small crawl space to provide access to the plumbing lines. Louis Marsico suggested to Rory that instead of accessing the pipes on his back through the small crawl space that he should instead remove the plywood flooring and work on the pipes from above. He also suggested to his son that he hire a plumber to perform the work, but his son declined. Rory in fact did remove a portion of the plywood from the floor on March 24, 2012, in order to access and work on the plumbing lines.

Because Rory was installing a bathroom he planned to install tile flooring on at least a portion of the floor. Louis advised Rory that given this plan he should glue and screw the plywood down after he was done with the plumbing.

On Saturday night before Louis left, he and Rory discussed that the plan was for Rory to finish the plumbing work that night and afterwards lay down the plywood flooring in preparation for working on the electrical lines. The focus on completing the plumbing on Saturday night was because the plumbing had to be completed before the electrical equipment could be placed. This was so that the electrical and plumbing equipment did not interfere with each other. With the plumbing lines completed, the men had planned that on Sunday Louis would offer guidance to Rory as to locating the new electrical equipment, such as outlets, sconces, and wires.

On Sunday morning, Louis and his wife returned to Rory's home around 10:30 or 11:00 a.m. They planned to stay only a short while before driving back to Pittsburgh. The primary purpose of the visit was for Louis to offer his advice on placement of electrical equipment.

Rory told Louis that he was done with the plumbing work, and offered no other information on the remodeling work.  Louis entered the bathroom area alone while Rory and his mother were talking.  Louis surveyed the area in order to develop a plan as to where the electrical equipment would go.  He was in the bathroom for about 4 to 7 minutes taking measurements and gathering information.  At one point, he walked towards one wall, and then when walking towards another wall he stepped on a piece of plywood and fell through the floor, catching his right armpit on a floor joist.

Louis believed the plywood floor had been replaced and was secured.  Both Rory and Louis agree that viewing the plywood flooring on March 25, 2012, would not reveal that there was any visible danger.  The area where the plywood was not secured appeared similar to the area where the plywood had not been removed.

Rory and his mother took Louis to the emergency room at a hospital in High Point, North Carolina, where the doctors discovered that Louis had shattered the humerus bone in his shoulder.  Although the doctors in North Carolina wanted to admit Louis, he preferred to take pain medication and return to Pittsburgh, which he and his wife did on March 25, 2012.

In Pittsburgh, Louis underwent shoulder surgery to repair the humerus bone and to also repair a torn rotator cuff.   As a result of the surgery, 10 to 12 pins and screws and a 10-inch plate were surgically placed into the Plaintiff.  Louis did suffer some permanent nerve damage.  He is able to perform activities of daily living such as brushing his hair and teeth, but he does not have the full range of motion that he had prior to the injury and surgery.

Plaintiff has withdrawn his claim for lost wages, and the parties have stipulated that his past medical expenses and out-of-pocket expenses amount to $14,979.61.  In addition, Louis

Marsico has set out the following stipulated facts, some of which we have already mentioned, to which Rory Marsico has not objected. See Pltf. Stip. Of Parties, ECF No. 51, ¶¶ 58-78

Plaintiff sustained injuries on or about March 25, 2012 as a result of a fall at the home of the Defendant. Plaintiff received treatment at High Point Regional Health System through the Emergency Room. Plaintiff underwent X-rays at Greensboro Radiology. Plaintiff was treated by Three Rivers Orthopedic beginning on March 26, 2012. Plaintiff underwent CT and X-rays at UPMC Saint Margaret's Outpatient on March 26, 2012. Plaintiff underwent a cardiac work up by a cardiologist at University Cardiology. Plaintiff underwent surgery for a fractured humerus and repair of torn rotator cuff under general anesthesia at UPMC Saint Margaret on April 10, 2012. Multiple pins, screws and plate were necessary to repair the fracture. Plaintiff underwent a nerve block procedure.

Plaintiff received orthotic devices from De La Torre Orthotics following surgery. Plaintiff underwent months of physical therapy and rehabilitation. Plaintiff was required to wear a brace for several months. Plaintiff was placed on multiple medications including Oxycodone for severe pain. Plaintiff underwent additional EMG studies and nerve blocks relative to continued pain.

The parties stipulated that all of the above treatment and care were as a direct result of the injuries sustained by the Plaintiff at the residence of Defendant on or about March 25, 2012. The parties stipulated that the medical records which had been provided to Defense Counsel and which were offered into evidence were authentic and no witness were needed to authenticate the same. The parties stipulated that the medical bills which had been provided to defense counsel and which were offered into evidence were authentic and no witness were needed to authenticate the same. The parties stipulated that the treatment provided by all of the treating doctors and

facilities were standard treatment protocol and were medically necessary given the injuries and symptoms of the Plaintiff. The parties stipulated that the Plaintiff has a permanent scar on his shoulder as a result of the surgery. The parties stipulated that the Plaintiff has not regained full range of motion of the arm.

**II.     Discussion**

As noted, the parties have stipulated to the majority of facts in this case. Louis Marsico claims that Rory Marsico was negligent and his negligence was the proximate cause of his injuries. Rory Marsico essentially concedes that his actions were negligent and were the proximate cause of Louis Marsico's injury. He offers no argument to the contrary. Instead, he argues that he is not liable because Louis Marsico was contributorily negligent, and therefore is barred from recovery.

We have previously determined that North Carolina law applies in this case. Opinion, 6/1/2015, at 16, ECF No. 16. To prevail on a negligence claim in North Carolina, a plaintiff must establish that the defendant owed the plaintiff a duty of care, the defendant breached that duty, the plaintiff suffered damages, and the damages were proximately caused by the defendant's breach. See Clark v. Perry, 114 N.C.App. 297, 304-05, 442 S.E.2d 57, 61 (1994).

We conclude that Rory Marsico owed Louis Marsico a duty of reasonable care in the maintenance of his property, including the duty to warn of hidden dangers. Rory Marsico breached that duty when he improperly placed plywood sheets on the floor in the bathroom area of the remodeling project, such that the plywood was not properly supported by being placed over a joist, and failed to adequately warn Louis Marsico of the hidden dangerous condition. Rory Marsico's breach of his duty was the proximate cause of Louis Marsico's injuries.

Therefore, we find that Rory Marsico was negligent and his negligence was the proximate cause of Louis Marsico's injuries.

With Rory Marsico's implicit concession that his conduct satisfies the elements of a claim of negligence he argues against a finding of liability because Louis Marsico was contributorily negligent. Under North Carolina law, if a plaintiff is contributorily negligent it is a complete bar to recovery. Hall v. K-Mart Corp., 525 S.E.2d 837 (N.C.App. 2000); Smith v. Fiber Controls Corp., 300 N.C. 669, 268 S.E.2d 504 (1980). "More specifically, the doctrine of contributory negligence will preclude a defendant's liability if the visitor actually knew of the unsafe condition or if a hazard should have been obvious to a reasonable person." Id. at 838 (citing Pulley v. Rex Hospital, 392 S.E.2d 380, 383 (N.C. 1990)).

Rory first argues that Louis had actual knowledge of the unsafe condition of the construction area at his son's residence as evidenced by the pre-planning he did for the remodeling project prior to visiting North Carolina, his presence at the site and assistance with the project for approximately 12 hours on March 24, 2012, the fact that it was his suggestion to remove the plywood, that fact that he viewed the area where his son removed plywood including where the joists were located, and that he knew Rory was continuing to work on the project after he left on March 24, 2012.

He argues that Louis was contributorily negligent because he failed to exercise such care as an ordinarily prudent person would exercise under the circumstances in order to avoid injury. Rory argues that Louis's failure to exercise reasonable care consisted of failing to discuss the status of the project or specifically asking if the plywood was secured when he arrived at Rory's home on Sunday, March 25, 2012, prior to entering the bathroom. He entered an area he knew to

7

be under construction, which was not well lit, and he did so with no concern as to whether the plywood was secured.

Rory Marsico concludes that Louis Marsico, "a man with extensive experience in the construction industry, was aware of the potential danger and risks associated with walking in and around a construction area. Nevertheless, he entered the construction area at his son's residence on Sunday morning with the knowledge that it was still an active construction area and without taking any precautions. His actions constituted contributorily negligence." Def. Concl. Law ¶ 7.

We find that Louis Marsico was not contributorily negligent and thus he is not barred from recovery. We give little weight to Louis Marsico's prior experience in the construction industry as a factor in finding that he was contributorily negligent as his prior experience is not relevant to a small remodeling project where his primary role was advising on layout and placement of equipment. It is significant that Louis had actual knowledge that plywood flooring was removed, however, that was followed by Rory and Louis making a plan where Rory would finish the plumbing and secure the plywood before Louis would return to advise on placement of electrical equipment. Significantly, on Sunday morning, March 25, 2012, Rory expressly conveyed to Louis that the plumbing work was completed, but failed to tell Louis that he did not secure the plywood flooring. Under these circumstances we do not find that Louis Marsico had actual knowledge of an unsafe condition. In fact, it was only Rory who possessed such knowledge.

We also do not find it unreasonable that Louis did not specifically ask Rory if he had secured the plywood. Instead, he reasonably asked his son if he had "got everything done, and he said yes." Tr. 47; see also 48, 62. Rory knew his father went back to the bathroom area in order to survey it for placement of electrical equipment. At that point it was incumbent upon

Rory to warn his father that there was a hidden danger in the bathroom, but he did not. We therefore find that Rory Marsico was negligent in causing Louis Marsico's injuries and that Louis Marsico was not contributorily negligent.

*Damages*

Louis Marsico is entitled to damages. He seeks recovery for pain and suffering and loss of enjoyment of life along with his actual medical damages of $14,979.61, for a total amount of $1.5 million dollars.

We recognize that Louis Marsico has suffered a serious injury and will continue to suffer consequences in the future. As a result of the fall, Plaintiff shattered his humerus bone. He remained in pain during his trip from North Carolina to Pennsylvania. Ten days later he underwent surgery to repair his humerus bone and repair his torn rotator cuff. The surgery involved the placement of 10 to 12 pins and screws and a 10-inch plate into the Plaintiff's shoulder and arm area, and resulted in a four-inch scar.

While recovering from the surgery Plaintiff was required to sleep sitting up for approximately 9 weeks. Plaintiff took pain medicine for 15 days following his surgery and began physical therapy approximately 10 to 12 weeks later. He attended approximately 24 to 30 sessions of physical therapy, which was the maximum permitted by his medical insurance.

Due to his injuries Plaintiff has sustained permanent nerve damage, in part making his forearm and upper arm feel as if it they are asleep. His range of motion was limited for approximately one year, although he is now able to brush his teeth and brush his hair. He continues to favor his right shoulder and relies on his left arm to accomplish heavy lifting.

As a result of the fall, Plaintiff has been precluded from fully engaging in his lifelong hobbies. He chooses not to ski out of fear of reinjuring his arm. He is able to golf, much less

9

frequently, and he can no longer drive from the tees. Plaintiff was 57 at the time of the incident and it is reasonable to assume that Plaintiff would have been able to enjoy his hobbies for several more decades.

Having presided over the bench trial, reviewed the pleadings, as well as the evidence introduced at trial I find that Louis Marsico is entitled to an award of damages for pain and suffering and loss of enjoyment of life of $50,000.

This award is based on the specific facts of this case but we have also reviewed awards in similar cases. See Zurba v. U.S., 247 F. Supp. 2d 951, 961 (N.D. Ill. 2001) (quoting dicta that when trier of fact is the judge, Rule 52(a) obligates the judge to set forth damages awards he considers comparable, Jutzi–Johnson v. United States, 263 F.3d 753 (7th Cir.2001). We have reviewed the following cases: Tormenia v. First Inv'rs Realty Co., Inc., 251 F.3d 128, 138 (3d Cir. 2000) ($60,000 award for injuries to knee and shoulder); Alexander v. United States ., 132 F. Supp. 2d 332, 337 (E.D. Pa. 2001) (damages of $50,000 for injuries to neck, shoulder, and lower back is appropriate where neck and shoulder injuries resolved within months and where plaintiff exaggerated the extent of her discomfort as evidenced by her hospital and college records and vacation history); and Lockett v. Gen. Elec. Co., 376 F. Supp. 1201, 1205 (E.D. Pa. 1974) (damages in the sum of $66,000.00 for injury to muscles and nerves of the left upper arm and shoulder).

In addition, in Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030 (3d Cir. 1987), the United States Court of Appeals for the Third Circuit in undertaking its "responsibility to review a damage award to determine if it is rationally based," reviewed several cases involving awards for pain and suffering for physical injuries. Williams, 817 F.2d at 1038. The Court

reviewed the following cases. Williams, 817 F.2d at 1040-41. The cases reviewed by the Third Circuit Court are as follows.

In Kazan v. Wolinski, 721 F.2d 911, 913–15 (3d Cir.1983), the Court approved an ultimate award of $60,000 for injuries to plaintiff's neck and arm (approving district court's order of remittitur of $90,000 where jury awarded $150,000). In O'Gee v. Dobbs Houses, Inc., 570 F.2d 1084 (2d Cir.1978), the United States Court of Appeal for the Second Circuit reduced the district court's damages award of $170,000 to $85,000 for plaintiff who had back surgery, was unable to work for 14 months, had numbness and pain requiring medication, could no longer garden and had limited activities.

In Perricone v. Kansas City Southern Railway Co., 630 F.2d 317, 320 (5th Cir.1980), the United States Court of Appeal for the Fifth Circuit held a damage award of $170,000 was excessive where plaintiff lost 30% of motion in his neck, substantial damage to his teeth, and suffered occasional discomfort form whiplash. In Ferrero v. United States, 603 F.2d 510, 513–14 (5th Cir.1979), the same Court reduced the damage award of $650,000 to $150,000 where plaintiff's injuries to multiple parts of her body due to a car accident caused arthritic changes in her back, she suffered constant pain in her back, could only stand 15 to 30 minutes due to her knee injury without pain.

It is our determination that an award of $50,000 for pain and suffering and and loss of enjoyment of life is appropriate in this case. Accordingly, judgment will be entered in favor of Plaintiff, Louis Marsico, and against Defendant Rory Marsico.

## IV. Conclusion

As discussed above, we find that Rory Marsico was negligent, that his negligence was the proximate cause of Louis Marsico's injuries, and that Louis Marsico was not contributorily negligent. Louis Marsico will be awarded $14,979.61 in actual medical damages and $50,000 for pain and suffering and loss of enjoyment of life.

An appropriate Order will be entered.

Date: March 15, 2016

Maurice B. Cohill, Jr.
Senior United States District Court Judge